IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:09-CR-167-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| | ) | |
| WILBERT ROBERT SCHMIDT, | ) | |
| Defendant. | ) | |

On April 19, 2010, Wilbert Robert Schmidt ("Schmidt" or "defendant") pleaded guilty, pursuant to a written plea agreement, to producing child pornography from 1980 to October 1999, in violation of 18 U.S.C. § 2251(a) and (d) (counts two and three). The statutory penalty for producing child pornography is a term of imprisonment of not less than 10 years or more than 20 years. See 18 U.S.C. § 2251(d).[1]

The United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR provided notice pursuant to Federal Rule of Criminal Procedure 32(h) that an upward departure may be appropriate because "an aggravating . . . circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the [G]uidelines" exists, and also because Schmidt's conduct "was unusually heinous, cruel, brutal, or degrading to the victim." See U.S. Sentencing Guidelines Manual §§ 5K2.0, 5K2.8 [hereinafter "U.S.S.G."]; see also PSR ¶ 151. On July 13, 2010, the United States filed a motion for upward departure [D.E. 26]

---

[1]Because Schmidt's offense conduct concluded in October 1999, the applicable criminal code is that which was in effect in 1999, and the applicable U.S. Sentencing Manual is the 1998 edition. See United States v. Lewis, 606 F.3d 193, 199 (4th Cir. 2010).

under sections 4A1.3, 5K2.0, and 5K2.8. See U.S.S.G. §§ 4A1.3, 5K2.0, 5K2.8. On August 2, 2010, Schmidt responded in opposition [D.E. 30].

On August 19, 2010, the court held a sentencing hearing and considered all of the evidence presented, the arguments of counsel, and defendant's statement. The court granted the government's motion for an upward departure under sections 4A1.3, 5K2.0, and 5K2.8 and sentenced defendant to 240 months' imprisonment on count two and 180 months' imprisonment on count three. The sentences shall run consecutively producing a total imprisonment term of 420 months. The court enters this order to explain defendant's sentence.

I.

The court has reviewed the PSR, and the court adopts the undisputed facts stated therein. See Fed. R. Crim. P. 32(i)(3). From 1972 until October 1999, Schmidt repeatedly sexually abused at least 20 children and produced child pornography involving at least 15 victims. PSR ¶¶ 8, 10–11. In January 2009, one of Schmidt's family members brought two boxes to the Boiling Springs Lake Police Department. Id. ¶ 7. The boxes contained Polaroid photographs containing 6,432 images of child pornography. Id. Schmidt took 6,112 of the photographs, many of which depicted Schmidt's sexual abuse of children — primarily young boys. Id. The photographs included images of Schmidt engaging in sex acts with some of his victims, as well as images of children being bound and, in at least one case, penetrated with a turkey baster. Id. ¶¶ 7, 9–10. Schmidt's conduct included inducing siblings, who were his own relatives, to engage in sexually explicit conduct and photographing them. Id. ¶ 10. While producing the child pornography, Schmidt often gave alcohol to the victims. Id. ¶ 9. Schmidt's victims were between the ages of 6 and 16. Id. ¶ 11. At least three victims had not attained the age of 12. Id. Four of the victims had attained the age of 12, but had not attained the age of 16. Id. Because investigators are unable to confirm the ages of the remaining victims, the

remaining victims are considered to be 16 years of age for Guidelines calculation purposes. See PSR ¶ 11.

On January 16, 2009, Schmidt was arrested on state charges. Id. ¶ 7. Later, a federal grand jury began investigating Schmidt. On December 22, 2009, a federal grand jury indicted Schmidt for possessing child pornography (count one), producing child pornography (counts two – six), and transporting child pornography (count seven).[2] On April 19, 2010, Schmidt pleaded guilty, pursuant to a written a plea agreement, to two counts of producing child pornography from 1980 to October 1999, in violation of 18 U.S.C. § 2251(a) and (d). As outlined in the PSR, Schmidt has 0 criminal history points, producing a criminal history category of I. See PSR ¶¶ 14–15. The probation officer calculated the total offense levels for each of the victims, taking account various aggravating factors including that certain victims were younger than 12 years old, certain victims were younger than 16 years old, and certain victims were Schmidt's relatives. See id. ¶¶ 32–115. After applying a multiple-count adjustment in accordance with section 3D1.4, Schmidt's offense level is 38. Id. ¶¶ 32–134. After a 3-level reduction for acceptance of responsibility, Schmidt's total offense level is 35. Id. ¶¶ 134–37. As such, the corresponding advisory Guidelines range is 168 to 210 months' imprisonment. Id. ¶ 140.

II.

The Supreme Court has described the process for imposing a sentence under the now-advisory sentencing Guidelines:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable [U.S. Sentencing] Guidelines range. As a matter of administration and to

---

[2]Schmidt engaged in sexual abuse and took the photographs while living in New Jersey, and brought the photographs with him when he moved to North Carolina in 1999. See PSR ¶¶ 7–8, 10.

3

secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. . . . [A] major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

Gall v. United States, 552 U.S. 38, 49–50 (2007) (citations & footnote omitted); see Nelson v. United States, 129 S. Ct. 890, 892 (2009) (per curiam); Spears v. United States, 129 S. Ct. 840, 842–43 (2009) (per curiam); Kimbrough v. United States, 552 U.S. 85, 100–01 (2007) ("[W]hile the statute still requires a court to give respectful consideration to the Guidelines, [United States v.]Booker[3] permits the court to tailor the sentence in light of other statutory concerns as well." (citations & quotation omitted)); Rita v. United States, 551 U.S. 338, 357–58 (2007); United States v. McNeill, 598 F.3d 161, 166–67 (4th Cir. 2010); United States v. Carter, 564 F.3d 325, 328–30 (4th Cir. 2009); United States v. Evans, 526 F.3d 155, 160–61 (4th Cir. 2008); United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007); United States v. Hecht, 470 F.3d 177, 181 (4th Cir. 2006). The court recognizes its duty within this framework to "make an individualized assessment based on the facts presented," Gall, 552 U.S. at 50, and to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [the sentencing statute]." 18 U.S.C. § 3553(a); see, e.g., Kimbrough, 552 U.S. at 100–01; Carter, 564 F.3d at 328–30.

---

[3] 543 U.S. 220 (2005).

## III.

First, the court must calculate the applicable advisory Guidelines sentencing range. See, e.g., Gall, 552 U.S. at 49–50. There are no objections to the PSR. PSR add. 1. Thus, Schmidt's criminal history category is I and his total offense level is 35. Accordingly, his advisory Guidelines range is 168 to 210 months' imprisonment. See PSR ¶ 140.

Having calculated the advisory Guidelines range, the court next must determine whether a sentence within the applicable advisory Guidelines range serves the factors set forth in 18 U.S.C. § 3553(a) and, if not, select a sentence within the statutory limits that serves those factors. See, e.g., Gall, 552 U.S. at 49–50; Pauley, 511 F.3d at 473. In doing so, the court first may look to whether a departure is appropriate based on the sentencing Guidelines or relevant case law. See Pauley, 511 F.3d at 473. Because the PSR and the government's upward-departure motion specified the possible grounds for departure, notice was provided in accordance with Federal Rule of Criminal Procedure 32(h). See, e.g., United States v. Abbott, 221 Fed. Appx. 186, 190 (4th Cir. 2007) (per curiam) (unpublished).

Under section 4A1.3, an upward departure may be warranted "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3 (1998); see United States v. Myers, 589 F.3d 117, 125 (4th Cir. 2009); United States v. Lawrence, 349 F.3d 724, 726–27 (4th Cir. 2003). "In deciding whether to depart under this provision, the court may consider prior similar adult conduct not resulting in a criminal conviction." United States v. Grubbs, 585 F.3d 793, 803 (4th Cir. 2009); see U.S.S.G. § 4A1.3(e). Under section 4A1.3, a court determines the extent of a departure by using, as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely

5

resembles that of the defendant. See U.S.S.G. § 4A1.3. The background commentary to section 4A1.3 recognizes that "the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur." U.S.S.G. § 4A1.3 cmt. background.

Schmidt has a long and unrelenting history of sexually abusing children. See PSR ¶¶ 7–11. For approximately 40 years, Schmidt (age 64) has consistently violated state and federal laws prohibiting the sexual abuse and exploitation of children. See id.[4] Schmidt admits that he began molesting children as young as 6 years old in 1972, and he continued to molest children until 1999. Id. ¶ 8. He repeatedly abused and exploited two close relatives over the course of six years, and took hundreds of sexually explicit images of each child. Id. ¶ 10. Schmidt also stripped, bound, gagged, and photographed some of the children he victimized. Id. ¶ 9. Schmidt also penetrated his victims with objects. Id. In light of the extensive duration of Schmidt's criminal conduct, and the repetitive and unrelenting nature of his predatory behavior, the court finds that criminal history category I is wholly inadequate to capture the seriousness of Schmidt's criminal history and the likelihood that he will recidivate. An upward departure based upon similar, but less extreme, facts is supported by caselaw. See, e.g., Grubbs, 585 F.3d at 797, 803–04 (quotation omitted).

Next, the court addresses the extent of the upward departure. A district court may exercise its discretion not to depart. See, e.g., United States v. Cash, 983 F.2d 558, 561 (4th Cir. 1992). A court that elects to upwardly depart under section 4A1.3 must move horizontally across successive criminal history categories up to category VI, and, if category VI is inadequate, is to then vertically traverse to successively higher offense levels until it finds a Guidelines range appropriate to the case.

---

[4] Although there is no evidence that Schmidt sexually assaulted children or produced child pornography after October 1999, he possessed child pornography in violation of 18 U.S.C. § 2252(a)(4) from 1999 until he was arrested in 2009. See PSR ¶¶ 7–11.

6

See, e.g., U.S.S.G. § 4A1.3; McNeill, 598 F.3d at 166–67; United States v. Dalton, 477 F.3d 195, 200 (4th Cir. 2007). Furthermore, a court need not "go through a ritualistic exercise in which it mechanically discusses each criminal history category or offense level it rejects en route to the category or offense level that it selects." Dalton, 477 F.3d at 199 (quotation and alterations omitted). Because the court finds that category I is inadequate, the court moves horizontally across the sentencing table and analyzes criminal history categories.

The court finds that category IV is most appropriate for Schmidt based on the serious nature of his offense conduct and the high likelihood that he will recidivate. Schmidt relentlessly abused at least 20 different children over the course of decades. Nevertheless, he was not caught; therefore, he received no convictions or sentences for this criminal conduct. The court conservatively believes that Schmidt's behavior warrants eight additional criminal history points. Cf. United States v. McKenley, 895 F.2d 184, 185–87 (4th Cir. 1990). In making this finding, the court has considered criminal history categories II and III, and finds that they do not adequately reflect the seriousness of Schmidt's conduct and the high likelihood that he will commit other crimes against children. Cf., e.g., McNeill, 598 F.3d at 166–67; Grubbs, 585 F.3d at 803–04; Evans, 526 F.3d at 160, 165–66; McKenley, 895 F.2d at 185–87. Specifically, criminal history categories II and III fail to reflect the repetitive nature of Schmidt's conduct over such an extensive period of time, the number of children Schmidt victimized, and his high likelihood of recidivism.

Next, the court considers whether an upward departure under sections 5K2.0 and 5K2.8 is appropriate. Under section 5K2.0, an upward departure may be warranted "even though the reason for departure is taken into consideration in determining the [G]uideline[s] range . . . if the court determines that, in light of unusual circumstances, the weight attached to that factor under the

7

[G]uidelines is inadequate." U.S.S.G. § 5K2.0 (1998). Under section 5K2.8, an upward departure may be warranted if "defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim." Id. § 5K2.8.

Schmidt engaged in repeated, sadistic, and violent abuse of his victims. See PSR ¶ 9. The abuse included sexual contact with his victims. Id. ¶¶ 7–8, 10. Such aggravating factors are not adequately considered in the 1998 edition of the Guidelines Manual. Cf. U.S.S.G. §§ 2G2.1(b)(2), 2G2.1(b)(4) (2009) (requiring a 2-level increase if the offense involved "the commission of a sexual act or sexual contact," and requiring a 4-level enhancement if the offense "involved material that portrays sadistic or masochistic conduct or other depictions of violence"). Furthermore, Schmidt produced over 6,000 images of child pornography, which he transported with him when he moved from New Jersey to North Carolina in 1999. See PSR ¶¶ 7–11, 20. He then retained those images for approximately a decade. The number of images is extraordinary, and not adequately considered by the applicable Guidelines Manual. In addition, Schmidt repeatedly used alcohol to weaken already-vulnerable children to make it easier for him to sexually abuse and exploit them. See id. ¶ 9.

The court finds that such extraordinary aggravating factors are not adequately considered by the applicable Guidelines Manual, and that such conduct is unusually heinous and degrading to the child victims. Although Schmidt abused so many children that he cannot even remember all of their names, each child will forever remember the abuse. Cf. New York v. Ferber, 458 U.S. 747, 758 n.9 (1982) ("It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual disfunctions, and have a tendency to become sexual abusers as adults."); United States v. Sarras, 575 F.3d 1191, 1220 (11th Cir. 2009) ("Child sex crimes are among the most egregious and despicable of societal criminal offenses."). Accordingly, the court

8

finds that an offense level of 35 does not adequately represent the nature of Schmidt's conduct, and the court exercises its discretion under section 5K2.0 and 5K2.8 to depart. The court finds that the exceptional aggravating factors in this case warrant, conservatively, 4 additional offense levels, bringing Schmidt's total offense level to 39. Cf. Grubbs, 585 F.3d at 798, 803–04; United States v. Kapordelis, 569 F.3d 1291, 1318 (11th Cir. 2009); United States v. Martinucci, 561 F.3d 533, 534–35 (2d Cir. 2009) (per curiam); United States v. Jordan, 435 F.3d 693, 696–98 (7th Cir. 2006); United States v. Kise, 369 F.3d 766, 769–70, 775 n.10 (4th Cir. 2004).

In opposition to the motion for upward departure, Schmidt notes that he is 64 years old, in poor health, and has a statistically lower chance of recidivism than younger offenders. See Def. Sent. Mem. 2. Schmidt also argues that he has "not offended in 10 years," and that a sentence within the pre-departure advisory Guidelines range is "effectively" a life sentence. Id. at 2–3. Furthermore, Schmidt argues that even if he survived a Guidelines sentence, the Department of Justice could then evaluate whether he was sexually dangerous under 18 U.S.C. § 4248 before releasing him. Id. at 3. If the Department of Justice believed (at this unspecified date in the future) that Schmidt was sexually dangerous, then he could be detained under 18 U.S.C. § 4248. Id.; cf. United States v. Comstock, 130 S. Ct. 1949, 1954–55, 1961–65 (2010) (discussing history of 18 U.S.C. § 4248).

The court rejects Schmidt's arguments. Although Schmidt is 64 and not in good health, he did offend within the past 10 years. Specifically, he possessed a massive collection of child pornography from 1999 until he was arrested in 2009. Furthermore, although Schmidt apparently did not molest any children since moving to North Carolina in 1999, he concedes that he did not have the same access to children that he had in New Jersey. Moreover, this court cannot predict with any certainty how long Schmidt will live or whether a Guidelines sentence is "effectively" a life sentence. As for 18 U.S.C. § 4248, it does not shift "the responsibility for protecting the public from

9

district courts at sentencing to the Department of Justice at the time a prisoner is released." United States v. Jeffries, No. 09-3377, 2010 WL 3034762, at * 2 (8th Cir. Aug. 5, 2010). Rather, "the civil commitment statutes [such as 18 U.S.C. § 4248] are best viewed as a complement to the district court's sentencing discretion." Id. Accordingly, for the reasons given earlier, the court believes that an upward departure is appropriate.

In light of the upward departure, the court calculates Schmidt's criminal history category as IV and his offense level as 39. This calculation yields an advisory Guidelines range for imprisonment of 360 months to life. See U.S.S.G. § 5A (sent'g table). The statutory maximum for each offense of conviction, however, is 240 months per count.

IV.

The court next considers whether the resulting advisory Guidelines range serves the factors set forth in 18 U.S.C. § 3553(a). The court recognizes its obligation to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." 18 U.S.C. § 3553(a); see, e.g., Gall, 552 U.S. at 49–50. These purposes include the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a)(2)(A)–(C). The court also must consider the nature and circumstances of the offense and the history and characteristics of the defendant. See id. § 3553(a)(1). Of course, the court has considered, as appropriate, all of the factors set forth in 18 U.S.C. § 3553(a), all arguments of counsel, and defendant's allocution. The court must select a sentence in light of the section 3553(a) factors, and must adequately explain the rationale for its sentence. See Gall, 552 U.S. at 46, 50; Carter, 564 F.3d at 328.

As for the nature and circumstances of the offense, the offenses of conviction are very

10

serious. In 1972, Schmidt began sexually abusing children as young as 6 years old, and he continued to sexually abuse children until 1999. As part of the sexual abuse, Schmidt produced over 6,000 images of child pornography, which he transported with him when he moved from New Jersey to North Carolina in 1999. He then retained the child pornography for approximately a decade. As part of his exploitation, he repeatedly abused and victimized two close relatives over the course of six years, and took hundreds of sexually explicit images of each of them. Schmidt also engaged in sadistic and violent abuse of his victims. He then memorialized his victimization of the children by photographing them and keeping the photographs. As part of the abuse, he repeatedly engaged in sexual contact with his victims. Furthermore, Schmidt frequently used alcohol to weaken the constitution of the children he assaulted. The court imposes a sentence that recognizes the seriousness of Schmidt's offenses and promotes respect for the law. Cf. Ferber, 458 U.S. at 758 n.9; United States v. Irey, No. 08-10997, 2010 WL 2949465, at * 38–42 (11th Cir. July 29, 2010) (en banc). Anything less than a substantial period of incarceration for Schmidt would fail to promote such objectives.

As for Schmidt's history and characteristics, he is 64 years old and is a retired fireman. Somehow he avoided detection and amassed an astonishing and relentless record of sexually abusing children. See PSR ¶¶ 7–11. The abuse took place month after month, year after year, and decade after decade. Instead of rejecting a criminal lifestyle of abusing and exploiting children, Schmidt victimized at least 20 children over the course of decades. Both specific and general deterrence are critical in this case, particularly given Schmidt's offense behavior, past conduct, and near certain likelihood of recidivism. "The more serious the crime and the greater the defendant's role in it, the more important it is to send a strong and clear message that will deter others." Irey, 2010 WL 2949465, at *45.

The court has considered Schmidt's statement at the sentencing hearing and defense counsel's arguments. Cf. Gall, 552 U.S. at 51–52 (noting the institutional advantage that district courts have over appellate courts in assessing credibility and gaining insight needed to find facts and adjudge their import under section 3553(a)). At sentencing, Schmidt apologized to his victims and to his family. Schmidt also discussed that he voluntarily gave up "recreational drug use" in the 1970s and gave up alcohol more recently. He also noted that he had not abused a child since 1999 and would not do so again.

Notwithstanding Schmidt's statements, the court did not find him credible and finds that he continues to represent a threat. The court shall impose a sentence that reflects the seriousness of the offenses, promotes respect for the law, provides just punishment for the offenses, and affords adequate deterrence to criminal conduct (both to Schmidt and others like him). The sentence also will provide the public with much needed protection from further crimes of the defendant and will provide time for mental health treatment, which Schmidt clearly needs.

Under section 5G1.2 of the Guidelines, "if a defendant is convicted of multiple counts of an offense and the calculated sentence under the Guidelines exceeds the statutory maximum on one of the counts, the sentence should be imposed consecutively, but only to the extent necessary to produce a combined sentence equal to the calculated sentence." United State v. Allen, 491 F.3d 178, 194–95 (4th Cir. 2007) (recognizing that stacking remains permissible post–Booker); see U.S.S.G. § 5G1.2 (1998). In this case, because the Guidelines range exceeds the statutory maximum for one count, and Schmidt has pleaded guilty to two counts under 18 U.S.C. § 2251, the court "stacks" Schmidt's two counts consecutively to achieve a sentence within the applicable Guidelines range. See Allen, 491 F.3d at 195; United States v. Chase, 296 F.3d 247, 250–51 (4th Cir. 2002); United States v. Angle, 254 F.3d 514, 518 (4th Cir. 2001) (en banc); United States v. White, 238 F.3d 537, 543 (4th

12

Cir. 2001). Accordingly, for the reasons explained above and in open court, the court sentences Schmidt to 240 months' imprisonment for count two and 180 months' imprisonment for count three. The sentences shall run consecutively, yielding a total imprisonment sentence of 420 months. The court also grants the government 90 days to file a request for restitution. See 18 U.S.C. § 3664(d)(5).

Alternatively, the court notes that it would impose the same sentence as a variance sentence even if it has incorrectly calculated the advisory Guidelines sentencing range or incorrectly departed. See, e.g., United States v. Alvarado Perez, 609 F.3d 609, 619–22 (4th Cir. 2010) (Shedd, J., concurring) (describing the process of announcing a post-Booker alternative sentence and determining the district court's sentence could be affirmed as a reasonable alternative variance sentence without reaching the merits of the claimed Guidelines calculation errors); United States v. Keene, 470 F.3d 1347, 1348–50 (11th Cir. 2006) (describing process of announcing a post-Booker alternative sentence); see also Grubbs, 585 F.3d at 804–05 (holding that even if the district court had incorrectly calculated the advisory Guidelines sentence, "the resulting sentence is procedurally reasonable because the district court adequately explained its sentence on alternative grounds supporting a variance sentence"); Evans, 526 F.3d at 164–66; United States v. McClung, 483 F.3d 273, 277 (4th Cir. 2007). For the reasons explained above and in open court, the court believes that an alternative variance sentence of 240 months' imprisonment on count two and 180 months' imprisonment on count three (to run consecutively thereby yielding a 420-month sentence), is the sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in [the sentencing statute]." 18 U.S.C. § 3553(a); cf., e.g., McNeill, 598 F.3d at 167; Evans, 526 F.3d at 162–66. The court announced the balance of defendant's sentence in open court and also described defendant's appellate rights.

V.

The court imposed defendant's sentence for the reasons discussed herein and the reasons discussed in open court, which are incorporated by reference. The order is intended to provide a statement of reasons for defendant's sentence, and does not alter or amend the court's judgment announced in open court.

SO ORDERED. This **23** day of August 2010.

                                  JAMES C. DEVER III
                                  United States District Judge